FREDERICK RIVENBURGH, Appellant, *v.* THE FIRST NATIONAL BANK OF MIDDLEBURGH, Respondent.

*Instrument of gift of a deposit in a bank executed by the donor shortly before his death — when it is effective to transfer the title — a consideration of the care and burial of the donor is sufficient — what proof justifies a recovery of the amount of the certificates of deposit.*

March 5, 1904, John D. King, who was then sick at the house of Frederick Rivenburgh, directed one Safford to draft an instrument giving Rivenburgh what he had for taking care of him and burying him.   Safford thereupon prepared the following instrument:

" GILBOA, *March* 5, 1904.

"In the year of our Lord, nineteen hundred and four, I, John D. King, do give all my property, goods and chattels with one hundred and thirty dollars in the Middleburgh Bank, for taking care of me through my sickness, all to Frederick Rivenburgh, but said King holds the property long as he lives.

his
" JOHN D. X KING.
mark

" Witnesses:

her
" LANY X RIVENBURGH,
mark

his
" FREDERICK X RIVENBURGH."
mark

The instrument was executed and delivered to Safford in the presence of Rivenburgh and thereafter Rivenburgh cared for King until his death, which occurred March 20, 1904, and paid his funeral expenses. After King's death Safford delivered the instrument in question to Rivenburgh, who found among King's effects two certificates of deposit issued by the Middleburg Bank, one for $100 and one for $30. These certificates were, by their terms, payable to King's order on their return properly indorsed. Rivenburgh indorsed upon the certificates the name of King by himself and also indorsed his own name thereon and took them to the bank, which refused to pay the same.

*Held*, that Rivenburgh was entitled to recover the amount of the certificates from the bank;

That it was not necessary to decide whether the delivery of the instrument to Safford constituted a valid gift to the plaintiff *causa mortis*, as the actual performance of the services rendered to King by Rivenburgh and the latter's payment of King's burial expenses constituted a sufficient consideration for the transfer.

*Semble*, that if the certificates of deposit had been assigned to Rivenburgh without being indorsed by King, Rivenburgh, upon proof of the assignment and upon his own indorsement, would be entitled to recover the amount thereof.

PARKER, P. J., dissented.

APPEAL by the plaintiff, Frederick Rivenburgh, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Schoharie on the 27th day of June, 1904, upon the dismissal of the complaint by direction of the court after a trial at the Schoharie Trial Term, and also (as stated in the notice of appeal) from an order entered in said clerk's office on the 27th day of June, 1904, directing the dismissal of the said complaint.

Upon the 5th day of March, 1904, John D. King was sick at the

house of the plaintiff, where, upon the 20th day of March there-after he died.   Upon said fifth day of March he executed and deliv-ered to one Safford a paper, of which the following is a copy:

"GILBOA, *March* 5, 1904.

"In the year of our Lord, nineteen hundred and four, I, John D. King, do give all my property, goods and chattels with one hundred and thirty dollars in the Middleburgh Bank, for taking care of me through my sickness, all to Frederick Rivenburgh, but said King holds the property long as he lives.

                                        his
"JOHN D. X KING.
                                        mark

"Witnesses:
          her
"LANY X RIVENBURGH,
      mark
            his
"FREDERICK X RIVENBURGH."
            mark

This paper was drawn by Safford upon King's statement to him that he wanted something drawn up to give Mr. Rivenburgh what he had for taking care of him and burying him.   It was delivered to Safford in the presence of the plaintiff, who, as it appears, was a witness of the paper, and thereafter Rivenburgh cared for the plain-tiff during the remainder of his sickness, and paid the expenses of his burial.   It is undisputed that the fair compensation for the care and expenses incurred in the burial was the amount of about $200, and it appears that the certificates in suit constituted the only property of any value left by King.   Five or six dollars only was paid by King to the plaintiff during his lifetime.

At the time of the execution of this instrument King had no moneys upon deposit in the Middleburg bank except such as were represented by the two certificates of deposit in suit, one for $100 and one for $30.   After the death of King, Rivenburgh found these certificates among his effects, took them to the bank, indorsed the name of King by Rivenburgh, and indorsed his own name.   He thereupon made affidavit of his interest in the certificates and demanded the amount thereof from the bank.   The bank refused payment, and this action is brought to recover the amount of such certificates.   Upon the trial the judge presiding dismissed the plain-

tiff's complaint. From the judgment entered upon such order the plaintiff has here appealed. Further facts appear in the opinion.

*George M. Palmer* and *W. H. Albro*, for the appellant.

*G. L. Danforth*, for the respondent.

SMITH, J.:

The certificates of deposit sued upon are in the usual form, reciting that King had deposited in the bank $100 and $30, payable to the order of himself on return of certificate properly indorsed. If these certificates have been assigned to plaintiff, though without the indorsement of King, upon proof of the assignment and upon his own indorsement, the plaintiff would seem to be entitled to recover. (*Savage* v. *Bevier*, 12 How. Pr. 166; Neg. Inst. Law [Laws of 1897, chap. 612], § 79.)

It is not necessary here to decide whether the delivery of this instrument to Safford constituted a valid gift to plaintiff *causa mortis*. The assignment of the certificates was given to Safford to be delivered to plaintiff after King's death in payment for the services of plaintiff in caring for him during his sickness and for the expenses of his burial. These services were rendered by plaintiff and the expenses incurred presumptively upon the faith of the paper which Safford held. The consideration of the transfer was not the plaintiff's promise to perform the service or to incur the expense. It was the actual performance of the services and the actual provision for the burial. After the performance of such services plaintiff became entitled upon the death of King to the delivery of the instrument held by Safford and to the certificates.

The paper recites that King is to hold the property as long as he lives, and Safford was requested by King to hold the paper and deliver it to Rivenburgh after King's death. While the authority to Safford was revocable if King recovered from his sickness, it was otherwise absolute. King did not recover. The authority was not revoked and the paper executed by King was properly delivered by Safford to plaintiff after King's death. The judgment should, therefore, be reversed.

All concurred, except PARKER, P. J., dissenting in opinion.

PARKER, P. J. (dissenting):

I dissent from the conclusion to which the court has arrived in this case, and I state the facts at length for the reason that I cannot discover in the record before us any such as are given in the opinion of the court.

John D. King, sometime in the fall of 1903, went to live with his friend Frederick Rivenburgh, this plaintiff. It does not appear that there was any agreement as to the terms upon which he was to live there. He was an old and feeble man, and seems to have gone there, in the first instance, as a visitor. He remained there more or less until the next spring, and on the 20th day of March, 1904, he died there. At the time he went to the plaintiff's, and on March fifth thereafter, he was the owner of and held two certificates of deposit issued by the defending bank, one for $100 dated January 25, 1901, and the other for $30 dated March 30, 1903. The following is a copy of the $100 certificate, viz. :

{ 2 cent revenue }
{ stamp canceled. }

" No. 17532. The First National Bank, Middleburgh, N. Y., Jan. 25, 1901. John D. King has deposited in this Bank, one hundred dollars, payable to the order of himself on return of this certificate properly endorsed. Interest at 3 per cent per annum for even months if not drawn for six months. Interest ceases after 18 months. Demand certificate of deposit. Not subject to check.
" $100.00.                                    M. L. TATOR, *Cashier.*"

The thirty-dollar certificate was similar to that, except as to the amount, the date, the number and the revenue stamp.

King was sick at the plaintiff's some three or four weeks before he died, and the plaintiff and his wife during that time cared for and nursed him. The plaintiff also got a doctor for him once, and, during all the time that he was with plaintiff that winter, seems to have furnished him board and lodging in his family. He also at King's death "looked after his burial." It seems to be not disputed but that all the care, board, burial, etc., which the plaintiff furnished to King was fairly worth $200. Between five and six dollars only was paid by King to plaintiff.

On March fifth King, being then ill, asked the plaintiff to go and get some one to come and draw a paper for him. The plaintiff

went and procured Mr. Safford, a neighboring farmer, to come for that purpose. When Safford went to King he asked what he wanted, and King replied, "he wanted something drawn up to give Mr. Rivenburgh what he had, for taking care of him and burying him." Safford thereupon drew up a paper, of which the following is a copy, read it over to King, who said it was all right and signed it by making his mark thereto, and plaintiff and his wife thereupon made their marks thereto as witnesses, viz. :

"GILBOA, *March* 5, 1904.

"In the year of our Lord, nineteen hundred and four, I, John D. King, do give all my property, goods and chattels with one hundred and thirty dollars in the Middleburgh Bank, for taking care of me through my sickness, all to Frederick Rivenburgh, but said King holds the property long as he lives.

"JOHN D. X KING.
his      mark

"Witnesses :

"LANY X RIVENBURGH.
her   mark

"FREDERICK X RIVENBURGH."
his   mark

After King had executed the paper he gave it to Safford and requested him to hold it, and if he, King, died, to deliver it to the plaintiff; but if King got well, not to deliver it to the plaintiff, but to deliver it to King himself. Safford thereupon took the paper home and kept it until King's death, which occurred some two weeks later, and then delivered it to the plaintiff as King had directed.

The plaintiff thereupon looked over King's papers, and found the two certificates among them. He took possession of them and, claiming to be the owner of them as King's assignee, indorsed each one of them as follows : "John D. King by Frederick Rivenburgh. Assignee, Frederick Rivenburgh," and presenting the same to the said bank, demanded payment thereof. Such bank refused payment thereof; and subsequently this action was brought by the plaintiff individually to recover upon the said certificates as the owner and holder thereof. It does not appear that any executor or administrator has ever been appointed of said King's estate.

Upon the trial of this action, after the plaintiff had rested his case, the court on defendant's motion dismissed the complaint, with costs, and from the judgment entered thereon this appeal is taken.

The plaintiff seeks to recover against the bank the amount of the certificates in question, upon the theory that John D. King transferred to him the ownership thereof by the writing of March 5, 1904, which Safford drew up and delivered to the plaintiff after King's death. That writing does not mention such certificates, and it is not claimed that its execution amounted to an indorsement of them over to the plaintiff. The claim is that the phrase "all my property, goods and chattels, with one hundred and thirty dollars in the Middleburgh Bank," includes the certificates, and that being choses in action they pass by the assignment or transfer contained in such instrument.

Assuming that such a certificate may be transferred as an ordinary chose in action without indorsement, so as to vest a right of action *thereon* in the transferee, I am of the opinion that no assignment or transfer of King's property was either intended or perfected by the instrument in question.

It must be noticed that the execution of such paper was not the result of any contract between the plaintiff and King. The plaintiff was not claiming that King then owed him anything. He did not then ask for payment, or security, for a debt, nor did he agree, upon the execution of that paper, to accept it in discharge of any debt, or to perform any further services in consideration thereof. He does not now testify that any bargain whatever concerning King's property was then made or had been previously made, which was intended to be put into writing by the paper in question.

King's purpose, therefore, seems to have been simply this: He wished that all his property should be applied towards paying for his care and support so long as he did live, but being then ill and apprehensive that he might not recover, he desired that Rivenburgh should in that event have it all, provided he continued to care for him through to the end of such sickness. Hence he at once sent for some one who could draw up a paper that should express that desire, and evidently both he and Safford considered that the paper in question did express it.

But to make it clear that King did not intend that all his prop-

erty was to be at once transferred from himself to Rivenburgh, he left the paper with Safford and forbade its delivery until after his death. The purpose to retain the ownership of his property *to himself* so long as he lived is evidenced not only by the provision in the writing itself to that effect, but also by the further direction that the writing was to remain undelivered and have no effect whatever until after his death. The whole transaction was a voluntary act on King's part, one not carried out in pursuance of any contract or arrangement with Rivenburgh, but simply inspired by his own wish; and being altogether in the nature of a voluntary disposition of his property after his death. It is a significant fact that the paper assumes to transfer *all of King's property.* And it is exceedingly clear that King did not desire it to become effective until after his death. Under such an instrument, and under such circumstances, the title of King's property was not transferred to Rivenburgh. There was no present transfer whatever. There was an attempt to make a testamentary disposition of his property to Rivenburgh, but it utterly lacks the formalities and provisions which the law requires to make it effective as a will, and hence it was utterly insufficient to pass any title whatever. Rivenburgh did not through it acquire any ownership to the certificates, and so King died the owner of them, and no one but his administrator can recover upon them. The judgment is correct and should be affirmed, with costs.

Judgment reversed and new trial granted, with costs to appellant to abide event.